UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANDREAS L. MOORE, JR.,

        Petitioner,

                                      Case No. 22-cv-717-pp

    v.

PETER J. JAEGER,

        Respondent.

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 22), DENYING PETITIONER'S MOTION FOR DEFAULT JUDGMENT, EVIDENTIARY HEARING AND BAIL PENDING RESOLUTION OF *HABEAS CORPUS* PROCEEDINGS (DKT. NO. 33), DENYING CERTIFICATE OF APPEALABILITY AND DISMISISNG CASE**

On July 22, 2022, the petitioner field a petition for a writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2014 conviction on two counts of first-degree recklessly endangering safety by use of a dangerous weapon. Dkt. No. 10. The respondent has moved to dismiss the petition, arguing that it is untimely and that the petitioner has procedurally defaulted his claims. Dkt. No. 23. After the parties had fully briefed the motion to dismiss, the petitioner filed a "Motion for Default of Judgement Against The Respondent, a Evidentiary Hearing and a Supplemental Motion for Bail Pending Resolution of Habeas Corpus Proceedings." Dkt. No. 33. The court will grant the respondent's motion to dismiss, deny as moot the petitioner's motion for default judgment and other relief, deny a certificate of appealability and dismiss the case.

1

## I. Background

### A. State Criminal Case

On June 17, 2014, the State of Wisconsin filed a criminal complaint, charging the petitioner with two counts of first-degree recklessly endangering safety by use of a dangerous weapon. Dkt. No. 23-2 at 1, 19. See also State v. Moore, Case No. 2014CF002531 (Milwaukee County Circuit Court), available at https://wcca.wicourts.gov. As described by the circuit court, "[t]he complaint alleged that the [petitioner] shot Deangelo Gaines and Jeremy McGee on September 12, 2013 as they were standing outside a store near 27th and Cherry Streets in Milwaukee." Dkt. No. 10-1 at 2. The petitioner pleaded not guilty and proceeded to trial; the jury found him guilty on both counts. Dkt. No. 23-1.

On October 23, 2014, the state circuit court sentenced the petitioner to twelve years in prison followed by twelve years of extended supervision.[1] Dkt. No. 23-2 at 13-14. The court entered its judgment of conviction on October 27, 2014. Id. at 12. Following his conviction, the petitioner moved for a new trial based on newly discovered evidence—two affidavits from individuals who claimed that the petitioner was not the shooter. Dkt. No. 23-2 at 10; Dkt. No. 10-1 at 2-4. The circuit court denied the motion on October 5, 2015, finding that the affidavits did not constitute "newly discovered evidence." Id.

---

[1] On January 27, 2015, the circuit court commuted the extended supervision term to five years on both counts. Dkt. No. 23-1 at 2.

2

On March 23, 2016, the petitioner's appellate counsel filed a no-merit report in the Wisconsin Court of Appeals. Dkt. No. 23-3 at 2. On July 21, 2016, the court of appeals voluntarily dismissed the no-merit report. Id. at 1. On September 1, 2016, the petitioner filed a motion for postconviction relief in the circuit court. Dkt. No. 23-2 at 8. The parties stipulated to amend the judgment of conviction to show only a single DNA surcharge. Id. at 7. Honoring the stipulation, the circuit court entered an amended judgment on October 11, 2016. Id.

On December 19, 2019, the petitioner filed a new motion for a sentence modification based on alleged new factors. Dkt. No. 23-2 at 7. The court denied the motion the following day. Dkt. No. 10-1 at 12-13.

On February 7, 2020, the petitioner filed a Knight petition[2] in the Wisconsin Court of Appeals alleging ineffective assistance of appellate counsel. Dkt. No. 23-5. The court of appeals denied the petition on March 9, 2020. Id.; Dkt. No. 10-1 at 14-18. Two weeks later, the petitioner filed a §974.06 postconviction motion alleging ineffective assistance of trial and postconviction counsel. Dkt. No. 23-2 at 6. The circuit court denied that motion on March 26, 2020, concluding that it was procedurally barred under the Escalona-Naranjo requirement[3] that a criminal defendant raise all grounds for postconviction relief in his original postconviction motion or appeal. Dkt. No. 10-1 at 19-20.

---

[2] State v. Knight, 168 Wis.2d 509 (Wis. 1992), specifying Wisconsin's procedure for challenging the effectiveness of appellate counsel.

[3] State v. Escalona-Naranjo, 185 Wis. 2d 168 (Wis. 1994).

3

The court of appeals affirmed the circuit court's denial on March 2, 2021. Dkt. No. 23-2; Dkt. No. 10-1 at 21-25. The Wisconsin Supreme Court denied the petition for review on May 19, 2021. Dkt. No. 23-2 at 2; Dkt. No. 10-1 at 27.

On December 22, 2021, the petitioner filed a new <u>Knight</u> petition in the court of appeals, again alleging ineffective assistance of appellate counsel. Dkt. No. 23-6 at 1. On June 2, 2022, the court denied the petition *ex parte* after determining that: the petition was not verified as required by Wis. Stat. §782.0; the petitioner already had litigated the issued raised in the petition; and the petitioner had failed to provide an adequate explanation for his successive petition. Dkt. No. 10-1 at 28-30. The petitioner did not file a petition for review with the Wisconsin Supreme Court. Dkt. No. 23-6.

B.     Federal *Habeas* Petition

On June 21, 2022, the petitioner filed in this court the instant petition for a writ of *habeas corpus* under 28 U.S.C. §2254, challenging his 2014 conviction for first-degree reckless endangerment. Dkt. No. 1. On June 22, 2022, Magistrate Judge William E. Duffin ordered the petitioner to file an amended petition using the Eastern District of Wisconsin's standard form. Dkt. No. 3. The petitioner re-filed, but failed to comply with Judge Duffin's order; Judge Duffin ordered the petitioner to re-file the amended petition using the court's standard form. Dkt. No. 9. On July 22, 2022, the court received the amended petition, this time on the correct form. Dkt. No. 10.

The amended petition raises five grounds for relief. <u>Id.</u> at 6-10. Ground One alleges a violation of the petitioner's Sixth Amendment Confrontation

Clause rights; he argues that the jury did not get to hear from, and he did not get to cross-examine, a witness named Mr. Gains. Id. at 6. He also asserts that he was denied his Sixth Amendment right to compulsory process because he did not have the opportunity to obtain this witness. Id. Ground Two alleges a violation of the petitioner's Due Process Clause rights based on a "secret deal" entered into between the State and the person whom the petitioner alleges is the actual shooter—his co-defendant, Jonathan Wilks. Id. at 7. Ground Three alleges ineffective assistance of trial and appellate counsel based on their alleged failures to produce an exonerating eyewitness (Mr. Gaines). Id. at 8. Ground Four alleges prosecutorial misconduct—failure to disclose material evidence—in violation of the Sixth and Eighth Amendments. Id. at 9-10. Finally, Ground Five alleges ineffective assistance of appellate counsel based on the fact that his appellate counsel filed a no-merit report. Id. at 10-11.

Judge Duffin screened the amended petition under Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer or otherwise respond. Dkt. No. 11. The case was reassigned to Judge Pepper on August 3, 2022; the respondent filed the motion to dismiss several months later.

## II.  Motion to Dismiss (Dkt. Nos. 22, 23)

### A.  The Parties' Arguments

The respondent argues that the petition is untimely. Dkt. No. 23 at 5. The respondent contends that after the circuit court entered an amended judgment on October 11, 2016, the petitioner had sixty days (roughly, until

5

December 10, 2016) to either file a new notice of appeal or file a motion seeking postconviction relief. Id. at 7-8 (citing Wis. Stat. §809.30(2)(h)). The respondent argues that because the petitioner did not do either of those things by the sixty-day deadline, the conviction became final for purposes of federal *habeas* review on December 10, 2016, starting the one-year limitation period under 28 U.S.C. §2244(d)(1)(A). The respondent asserts that the petitioner missed the §2244(d)(1)(A) one-year deadline to file his petition because he did not file his federal *habeas* petition until June 21, 2022, more than five and a half years after the conviction became final. Dkt. No. 23 at 8. The respondent contends that the petitioner cannot show that equitable tolling applies because he cannot show that he has been pursuing his rights diligently or that and "extraordinary circumstance" prevented him from timely filing his petition. Id. at 9-10.

In the alternative, the respondent argues that the court should dismiss the petition because all the grounds for relief are procedurally defaulted. Id. at 11. As to grounds One, Two, Three and Four, the respondent asserts that the court of appeals denied the claims on an adequate and independent state ground. Id. The respondent argues that ground Five is procedurally defaulted because the petitioner never presented that claim to the Wisconsin Supreme Court. Id.

The petitioner counters that his petition should not be dismissed as untimely because the §2244(d) limitation period should be equitably tolled. Dkt. No. 25 at 7. He argues that his attorney "took a while to give him all his

6

paperwork." Dkt. No. 25 at 2. He asserts that "[t]he court of appeals affirming the circuit court decision concluding Due Process errors that was raised in a Sentence Modification and raised in a **_§974.06"_** the cause of this continuance of 'barred arguments' herein from government officials is the reason for the time issues argued here." Id. He asserts that there is no time limit for requesting a sentence modification due to "new factors." Id. The petitioner contends that "the error's/neglect on the part of the previous courts and his attorneys constitutes an extraordinary event" satisfying the requirement for the application equitable tolling. Id. at 7. He also argues that his grounds for relief are not procedurally barred because he has established a manifest error of law and facts in his motion for a sentence modification. Id. at 8. Finally, the petitioner contends that he is "actually innocent." Id. at 24-25.

The respondent replies that the petitioner has shown neither diligent pursuit of his rights nor an extraordinary circumstance. Dkt. No. 28 at 3. The respondent notes that there was no activity in the petitioner's case from April 2017 to March 2019. Id. He asserts that the petitioner has not demonstrated how his appellate counsel's alleged ineffective assistance prevented him from timely filing a federal _habeas_ petition. Id. at 3-4. And, the respondent says, the petitioner has not demonstrated any "extraordinary circumstance" beyond the petitioner's control that prevented him from timely filing a petition. Id. at 4.

As to the petitioner's assertion of actual innocence, the respondent argues that the petitioner has presented no evidence that his co-defendant was the actual shooter. Id. And, the respondent argues, even if the petitioner had

7

presented some evidence supporting his claim of actual innocence, he has not demonstrated that it is more likely than not that no reasonable juror would have convicted him in light of new evidence. Id. at 5. The respondent discusses the new information the plaintiff referenced—that the petitioner's girlfriend did not believe the petitioner was the shooter, that the co-defendant was feuding with one of the victims at the time of the shooting, that the petitioner's arm was broken at the time of the shooting and that a friend of the co-defendant averred that the co-defendant had made comments about "taking care of" one of the victims. Id. The respondent asserts that the petitioner has offered nothing more than speculative, uncorroborated information to support his claim of innocence. Id. at 5-6.

The respondent also reiterates his procedural default arguments (and characterizes the petitioner's arguments as a misunderstanding of the function of a federal *habeas* proceeding), id. at 6-7, and notes that any arguments the petitioner has made regarding the merits of his claim are premature, id. at 7.

B.     Analysis

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") instituted a one-year statute of limitations for petitioners seeking federal *habeas* relief. 28 U.S.C. §2244(d)(1). The one-year period begins to run from the latest of the following four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the

8

United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1)(A)-(D).

The petitioner has not argued that any state action in violation of the U.S. Constitution or laws prevented him from timely filing this *habeas* petition, so §2244(d)(1)(B) does not apply. He has not argued that he is asserting a constitutional right newly recognized by the Supreme Court, so §2244(d)(1)(C) does not apply. He has not asserted that despite the exercise of due diligence, he did not discover the facts underlying his claims until a year prior to the date on which he filed his federal petition, so §2244(d)(1)(D) does not apply. That leaves 28 U.S.C. §2244(d)(1)(A), which states that the one-year limitation period begins to run from the date the petitioner's conviction became final by the conclusion of direct review or the expiration of the time for seeking such review.

On October 11, 2016, the circuit court entered an amended judgment of conviction. Dkt. No. 23-1 at 2. If the petitioner wanted to challenge that conviction, Wisconsin law require him to file a notice of appeal or a postconviction motion within sixty days. Wis. Stat. §908.30(2)(h). Sixty days from October 11, 2016 would have been December 10, 2016. The petitioner did

not file a notice of appeal or a postconviction motion by December 10, 2016. The state court docket shows that he did not file *anything* for almost two and a half years, until March 22, 2019 when he filed a petition for a sentence adjustment. Dkt. No. 23-2 at 7; <u>Moore</u>, Case No. 2014CF002531 (Milwaukee County Circuit Court), available at https://wcca.wicourts.gov. The petitioner's conviction became final sixty days after October 11, 2016—sometime around December 10, 2016. Under §2244(d)(1)(A), the petitioner had a year from December 2016 to file his federal *habeas* petition. The petitioner did not file his federal *habeas* petition until June 21, 2022, five and a half years later, and four and a half years after the §2244(d)(1)(A) deadline.

        1.    *Start of the One-Year Limitation Period*

Nowhere in his opposition brief does the petitioner specifically dispute the respondent's assertion that the petitioner's conviction became final on December 10, 2016. But as the respondent points out in his reply brief, the petitioner attached to his opposition brief a page from the publicly available docket for <u>Moore v. Winkleski</u>, Appeal No. 2021AP002196. Dkt. No. 25-1 at 2. Appeal No. 2021AP002196 is the second <u>Knight</u> petition the petitioner filed on December 22, 2021 in the Wisconsin Court of Appeals—the one that alleged for a second time that the petitioner's appellate counsel was ineffective and the one that the court of appeals dismissed as unverified, repetitive of a claim he'd already litigated and unauthorized. Dkt. No. 23-6 at 1. At the bottom of the docket sheet page the petitioner attached to his opposition brief, there appears a handwritten notation:

> The Suprem[e] Court Ruled on Mr. Moore's Motion on May 19th,
> 2021, putting his year time line to May 19th 2022, from 12-22-2021
> till [sic] 7-18-2021 he had this petition pending in court stopping his
> time line during this responce [sic]. Mr. Moore had five counting
> months to filing his petition under 2254, 7 month counted Before
> this petition. On July 22nd, 2022 is when he filed his petition for
> release 45 + 60 days later, less than 5 months he has left to file
> within this Court under Sec. 2254.

Dkt. No. 25-1 at 2.

To the extent that the petitioner intended this hand-written note to be a

challenge to the respondent's conclusion—and this court's conclusion—that his

conviction became final in December 2016, there are several problems with it.

First, the court assumes that the petitioner wrote this notation, but it is not

signed so the court cannot be sure. Second, the petitioner did not include this

argument—if it is an argument—in his brief in opposition to the motion to

dismiss.

Third, the facts related in the note have nothing to do with Moore v.

Winkleski, Appeal No. 2021AP002196. The petitioner references a Supreme

Court ruling from May 19, 2021. Dkt. No. 25-1 at 2. There *is* a Wisconsin

Supreme Court ruling dated May 19, 2021. Dkt. No. 23-2 at 2; Dkt. No. 10-1 at

27. The Supreme Court made that ruling in Appeal No. 2020AP000733, State

v. Moore—the petitioner's appeal from the denial of his March 23, 2020

§974.06 postconviction motion alleging ineffective assistance of trial and

postconviction counsel. Dkt. No. 23-2 at 6. The petitioner filed the March 23,

2020 §974.06 postconviction motion over three years after his conviction

became final in December 2016. Section 2244(d)(1)(A) provides that the one-

year limitation period for filing a federal *habeas* petition begins to run on either

11

the date the judgment becomes final at the conclusion of *direct* review or the date on which the time for seeking such review expires. The Seventh Circuit has held that a §974.06 motion for postconviction relief is not "direct review," but "collateral review," for the purposes of §2244(d)(1)(A). Graham v. Borgen, 483 F.3d 475, 479-480 (7th Cir. 2007). The filing of a §974.06 motion for postconviction relief has "no tolling effect whatsoever on the AEDPA statute of limitations," id. at 483, with one exception: if the §974.06 motion is properly filed *before* the judgment becomes final by conclusion of direct review or the expiration of the time for seeking such review, §2244(d)(2) says that the time during which the motion is pending "shall not be counted toward any period of limitation" under §2244(d).

The petitioner did not file the §974.06 motion that resulted in the Wisconsin Supreme Court's May 19, 2021 order until years after the conclusion of direct review of his conviction. He is, therefore, incorrect that the filing of that motion somehow stopped the one-year federal *habeas* clock or that the May 19, 2021 order started the one-year clock. (If that order had started the one-year clock, the petition still would have been untimely, since the petitioner filed his federal petition on June 21, 2022—one year, one month and two days later.)

The handwritten note also says something about a pleading pending "from 12-22-2021 till 7-18-2021," and asserts that that pleading stopped the time line. Dkt. No. 25-1 at 2. On December 22, 2021, the petitioner filed his second Knight petition in the Wisconsin Court of Appeals. Dkt. No. 23-6 at 1;

12

Moore v. Winkleski, 2021AP0002196, available at https://wscca.wicourts.gov. That pleading was pending in the court of appeals until July 18, 2022, the date of remittitur after the appellate court denied the petition. But the Supreme Court did not issue any order in that case; the petitioner did not seek review of the court of appeals' denial of his second Knight petition. Dkt. No. 23-6 at 2. Even if he had, a Knight petition alleging ineffective assistance of appellate counsel, like a §974.06 postconviction motion, is a form of *collateral* review, not direct review. Springer v. Benik, 134 Fed. App'x 961, 962 (7th Cir. 2005). And again, the petitioner filed the Knight petition on December 22, 2021—five years *after* his conviction became final.

None of the pleadings that the petitioner filed after December 10, 2016 paused the one-year federal *habeas* clock, or re-started it, or had any impact on it at all. The June 21, 2022 petition was not timely filed. In his opposition brief, however, the petitioner argues that the court should nonetheless accept the petition under the doctrine of equitable tolling.

2.    *Equitable tolling*

"Equitable tolling is an extraordinary remedy that is rarely granted." Ademiju v. United States, 999 F.3d 474, 477 (7th Cir. 2021) (quotations omitted). "A habeas petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. (quotations omitted). "'Extraordinary circumstances' are present only when an 'external obstacle' beyond the party's control 'stood in [his] way' and caused the delay."

13

Lombardo v. United States, 860 F.3d 547, 552 (7th Cir. 2017) (quoting

Menominee Indian Tribe of Wis. v. United States, 136 S. Ct. 750, 756 (2016)).

The petitioner has not demonstrated diligent pursuit of his rights or an

extraordinary circumstance.

With regard to diligent pursuit of his rights, as the court has indicated,

the petitioner appealed his conviction and the circuit court issued an amended

judgment of conviction on October 11, 2016. Dkt. No. 23-2 at 7. The docket

indicates that the petitioner did not file *anything*—not a petition for review with

the Wisconsin Supreme Court, not a motion to reconsider, nothing—for over

two years and five months. When he *did* file something in March of 2019, it

was not a challenge to his conviction—it was a petition for a sentence

reduction. Id.

The petitioner argues that his attorney was slow to give him his

paperwork and references "**Response On April of 2017 From The Clerk**

**Andrea Taylor Cornwell The Regional Attorney Manager**." Dkt. No. 25 at 2.

The letter to which he refers is dated April 28, 2017 and references Case No.

14CF002531, the petitioner's criminal case. Dkt. No. 25-1 at 1. It references

the petitioner's "recent" letter to the State Public Defender's Office in which the

petitioner asked for his case materials. Noting that the counsel appointed to

represent the petitioner was a private attorney who maintained his own case

file and that the State Public Defender did not have the petitioner's case file,

the letter (from SPD regional attorney manager Andrea Taylor Cornwall)

14

recommended that the plaintiff contact that private attorney directly and provided an address. Id.

This letter does not demonstrate that the petitioner was "diligently pursuing his rights." As noted, the petitioner's conviction became final in early December 2016. Attorney Taylor Cornwall's letter is dated in late April 2017—over four months later—and it indicates that the petitioner's letter to the SPD was "recent." More to the point, it does not appear that the petitioner's appointed lawyer was slow to get the petitioner the materials he requested. It appears that the *petitioner* wrote to the wrong place requesting his case materials; instead of writing to his appointed counsel, he wrote to the State Public Defender. Finally, while Attorney Taylor Cornwall's letter was dated April 28, 2017, the petitioner does not explain what happened between April 28, 2017 and March 22, 2019. He does not explain whether he contacted his appointed counsel, does not explain whether that counsel provided him with his case materials or when and does not explain how any delay caused him to wait over four years to file his federal *habeas* petition. The petitioner has not demonstrated that he was diligent in pursuing his rights.

Nor has the petitioner demonstrated that an "extraordinary circumstance" prevented him from timely filing his federal *habeas* petition by December 2017. The petitioner asserts that his attorneys' and the courts' neglect and delay constitute an "extraordinary circumstance." Dkt. No. 25 at 7. As noted, the petitioner has not proven any delay or neglect on behalf of his trial counsel, and he filed his attacks on his appellate counsel's effectiveness

15

after the one-year *habeas* limitation period had expired. He cannot demonstrate that a court's delay is responsible for his failure to timely file his petition—he did not have anything pending before any court during the one year between December 10, 2016 and December 10, 2017. The petitioner references what he perceives to be delays and errors by the courts that ruled on his motion for a sentence modification or his §974.06 postconviction motions or his <u>Knight</u> petitions. But all these pleadings were filed *after* the one-year limitation period for filing a federal *habeas* petition had expired.

Finally, even if the petitioner had identified some attorney error that a delay of over four years, the Seventh Circuit has held that because a party is bound by the acts of his attorney, "errors by an attorney acting on [a party's] behalf do not constitute external obstacles beyond the party's control." <u>Lombardo</u>, 860 F.3d at 552 (citations omitted). <u>See also</u> <u>Troconis-Escovar v. United States</u>, 59 F.4th 273, 278 (7th Cir. 2023) (an attorney's "[c]areless mistakes . . . are not reason for courts to exercise their equitable powers to override statutory requirements.").

The petitioner has not shown that he diligently pursued his rights or that some extraordinary circumstance prevented him from timely filing his federal *habeas* petition. The court will not equitably toll the limitation period under §2244(d).

### 3. *Actual innocence*

The petitioner argues that because he has presented evidence showing his actual innocence, the court should excuse his untimely filing. Dkt. No. 25

16

at 6-9. "Actual innocence is an equitable exception that renders the time limit set forth in section 2244(d)(1) inapplicable." Arnold v. Dittman, 901 F.3d 830, 836 (7th Cir. 2018) (citing McQuiggin v. Perkins, 569 U.S. 383, 386 (2013)). It "is merely a gateway through which a court can consider a petitioner's otherwise barred claims on their merits." Lund, 913 F.3d at 668 (citing Herrera, 506 U.S. at 404-05). "[T]enable actual-innocence gateway pleas are rare." McQuiggin, 569 U.S. at 386.

> A claim of actual innocence must be both credible and founded on new evidence. Schlup [v. Delo], 513 U.S. [298,] 324 . . . [(1995)]. To be credible, the claim must have the support of "reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." Ibid. That evidence must also be new in the sense that it was not before the trier of fact. Ibid.; Gladney [v. Pollard], 799 F.3d [889,] 898 [(7th. Cir. 2015)]. The petitioner's burden is to show that, in light of this new evidence it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

Id. at 836-37. The gateway is narrow; a petitioner must present "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Gladney, 799 F.3d at 896 (quoting Schlup, 513 U.S. at 316.)

In his response brief, the petitioner cites to an abundance of case law discussing "actual innocence" but does not clearly describe the alleged new evidence that he believes proves his actual innocence. He says has "significant facts and evidence supporting his innocence." Dkt. No. 25 at 9. He claims that he presented character evidence of his co-defendant's motive and intent, "which is clear and convincing evidence that the petitioner is wrongfully

17

convicted." Id. at 30. Absent from these assertions, however, is any mention of the *actual* new evidence that the petitioner believes prove his innocence.

The petitioner states in his response brief that he did not know the shooting victims; he says that one of them did not come to court but had stated that the shooter was the petitioner's co-defendant and that the other came to court but did not say that the petitioner shot him. Dkt. No. 25 at 3. None of this appears to be new evidence; the petitioner knew at the time of his trial that one victim did not come to court and that the other did not testify that the petitioner was the shooter. As to the victim who did not come to court, the petitioner implies that he wasn't able to call that person as a witness himself, but he would have known that at the time of trial, too. The petitioner says that a school security guard would have testified that one of the victims told her that the co-defendant was the shooter, directing the court to unidentified exhibits the petitioner has filed. Id. at 4. With his petition, the petitioner filed fourteen pages of documents. Dkt. No. 1-1. At page 3 of those documents is a page of the police report relating to the shooting, reporting that school safety officer Sherlie Hamberlin told the investigating officer that victim Deangelo Gaines stated that he was shot by Johnathan E. Coleman-Wilks. Id. The petitioner does not explain how this is new evidence; he knew of this information at the time of trial and knew at that time that his lawyer had not called Hamberlin as a witness.

Also buried in the petitioner's thirty-page, single-spaced response brief is his argument that he should have received a new trial based "on the affidavit of

a witness/victims who could have been produced at trial and cross-examined." Dkt. No. 25 at 11. In addition to his arguments regarding witnesses who could have been called but were not, the petitioner may be referring to the two affidavits that formed the basis of his 2015 motion for a new trial. Dkt. No. 10-1 at 2-4. In that motion, the petitioner argued that a private investigator had "unearthed important information about one of the witnesses who testified at trial for the State." Id. at 2. One affidavit came from the petitioner's girlfriend, who stated that the petitioner "did not shoot Deangelo Gaines and Jeremy McGee" and that the State's main witness, Jonathan Wilks, was the shooter. Id. The other affidavit came from Gregory Williams, a friend of Wilks, who stated he heard Wilks constantly talk about "'taking care of . . . Deangelo Gaines.'" Id. at 3.

The information in these affidavits is not new; the petitioner used them to move for a new trial in 2015, before his conviction became final. He certainly knew of them during the year after his conviction became final. And neither affidavit constitutes the sort of reliable evidence sufficient to undermine the court's confidence in the outcome of the trial. Henderson's affidavit is speculative and the petitioner points to no evidence to support it. She theorized that the petitioner could not have shot the gun because his right arm was broken and his left arm was fractured at the time of the shooting. Even if this court found that statement credible, that fact would have been known at the time of trial and is not new evidence. Williams's affidavit is similarly flawed. He theorized that Wilks must have been the shooter because Wilks talked about

"taking care of" one of the victims. Williams' affidavit is speculative, not the "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" necessary to pursue a gateway claim of actual innocence. Schlup, 513 U.S. at 324. The evidence the petitioner appears to reference does not meet the demanding standard of showing that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.

        4.    *Conclusion*

The petitioner has not met the standard for equitable tolling. He has not provided sufficient evidence to prove "actual innocence." The court will deny the petition as untimely and, for that reason, need not address the respondent's alternative argument regarding procedural default.

## III.    Motion for Default Judgement Against The Respondent, an Evidentiary Hearing, and a Supplemental Motion for Bail Pending Resolution of Habeas Corpus Proceedings (Dkt. No. 33)

On July 10, 2023, after the parties had fully briefed the motion to dismiss, the petitioner filed a motion requesting a default judgment against the respondent, an evidentiary hearing and release on bail pending resolution of his federal *habeas* proceeding. Dkt. No. 33. The petitioner explains that he is moving for a default judgment because the respondent did not file a response brief after the petitioner responded to the respondent's reply brief on April 14, 2023. Id. at 1. He argues that the respondent's delay is grounds for granting a default motion. In the alternative, the petitioner asks the court to release him on bond pending the court's ruling on his federal *habeas* petition. Id. at 1-2. The petitioner further contends that he is entitled to an evidentiary hearing

20

"because the merits of the factual dispute were not 'adequately' resolved in the state hearing properly . . . ." Dkt. No. 33 at 3.

Because the court is dismissing the petition as untimely, it will deny the motion as moot. The court notes, however, that even if the petition had been timely filed, the petitioner would not be entitled to default judgment. This court's local rules allow for three pleadings: a motion, one response from the non-moving party and one reply from the moving party. Civil Local Rule 7(a)-(c) (E.D. Wis.). The petitioner was not entitled to file a response brief to the respondent's reply brief (although he did so at Dkt. No. 29), and the respondent certainly was not required to file a reply to the petitioner's response to the respondent's reply. A party is entitled to default judgment only when the party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend. Fed. R. Civ. P. 55(a). The respondent responded to the petition—he filed this motion to dismiss, and did so by the December 19, 2022 deadline the court set (Dkt. No. 21).

## IV. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists would debate (or for that matter, agree that) the petition should have been resolve in a different manner or that the issues presented were adequate to deserve

21

encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because it believes that reasonable jurists could not debate the court's decision that the petitioner is not entitled to relief under 28 U.S.C. §2254.

## V.      Conclusion

The court **GRANTS** the respondent's motion to dismiss. Dkt. No. 22.

The court **DENIES AS MOOT** the petitioner's motion for default judgement against the respondent, an evidentiary hearing and a supplemental motion for bail pending resolution of habeas corpus proceedings. Dkt. No. 33.

The court **DECLINES** to issue a certificate of appealability.

The court **ORDERS** that the case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 31st day of July, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

22